And at this time we'll hear Doe v. Capiello, Rosado, Lima, and Valerio. We'll just hold off a minute while everybody is heading out. It seems that you're losing your audience. Well, everybody who matters is still here. Thank you, Your Honor. May it please the Court, my name is... Done. Okay. Thank you very much. May it please the Court. My name is Lawrence Schaefer, and I'm here representing defendants and appellants Lima and Valerio. And... You suppose we could... Thank you. Thank you. And this is on appeal for the very limited question of whether or not qualified immunity should apply. Now, in the case... This is an ongoing saga with respect to a situation that I'm not going to get into the detail of the facts. But with respect to qualified immunity, the law provides that there has to be a statutory or constitutional right, and that right has to be clearly established at the time of the deprivation. But qualified immunity goes deeper than that, it's broader than that. The purpose of qualified immunity is to give breathing room to officials. So they're not judged in 20-20 hindsight. They have some arguable differences. And, in fact, the law says you can be mistaken as long as you're reasonable. Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. So do you really seriously dispute the first part of that? That is, the part that says that a familial association is a fundamental right? No, Your Honor. We do not. We're only talking about the procedural deprivation issues and so on. Absolutely. I mean, the case of U.S. v. Myers... Let's focus on that. We're going to focus right on that. So what happens in this case? It really comes down to the first deprivation that started in 2013. I'm sorry, 2012, when the child left the home, or when Mr. Doe left the home. There is a protocol laid out informally during that time frame. The protocol was a conference with the probation officer, parole officer, the supervisor, and maybe a regional chief. At that time, there was a meeting, and they concluded, based upon review of the facts, that the removal from the home was appropriate. Later on, another parole officer came in, met with a social worker, met with some others, and decided to overturn that, and the father was allowed to return back to the home. Subsequently, there was another meeting, and the father was again removed from the home. No intervening problems had arisen. No, there was no intervening problems. With the clearly established right comes the principle that the right can be infringed only upon satisfaction of strict scrutiny, right? Correct. All right. So what do you think strict scrutiny required here in order to remove him? It required, put it plainly, our officers should have complied exactly with the protocol laid out. They did not. There had been no protocol. Wouldn't strict scrutiny require, at a minimum, some cause to think that he posed a danger to his own children? And then a narrow tailoring of the limitations in order to infringe the right only to the degree necessary to deal with that problem? I believe that Officer Lima laid that out in his letter, setting forth the reasons for the deprivation. The past was that the individual was highly manipulative, that he groomed the individual, that although it was not his child, it was in the family constellation. And all those factors. He also talked to the victim of the first offense, as well as Bronx County District Attorney's Office, Bronx Family Court, and other individuals involved. Did anybody ever consider the possibility, just apropos, the narrow tailoring issue of supervised visitation? No. As far as the record indicates, it was an all or nothing. It was full. To that extent, how do you think that you defeat qualified immunity? Isn't there at least a question as to whether strict scrutiny can be satisfied when it was an absolute bar and no consideration was given to supervised visits? The plaintiffs requested the unsupervised contact as far as the father living in the house. Our individuals reviewed the case over and found that it was appropriate to have the father removed. Like I said before, it was an all or nothing. I understand that that's what they wanted, that they wanted him to continue living in the home. But for purposes of claiming here that you're entitled to qualified immunity, how do you satisfy the least restrictive limitation on this right? I believe it was, again, just them going through the protocol and laying out the factors. I thought you said they didn't do the protocol. They did it, but not in a timely manner in accordance with the 45 days. That's a problem, too, if you want to rely on it. I'm not making any predictions about how this would come out if it went to trial, but I don't understand how you think you've established as a matter of law that reasonable officers would have thought that an absolute ban satisfied strict scrutiny here. Again, that's in the appendix of 402, how Parole Officer Lima laid out his decision and the basis. Lima was the brass chief. Yes, he was the senior officer. Let me just make one point. I see my time's up. Go ahead. With respect to Valero, Valero was the parole officer for a very short time from September 2013 only to December. Now, the facts are much stronger, admittedly, against Chief Lima, but Valero did not make decisions. He was not involved, and I know I don't want to be stepping over limited jurisdiction on the appeal, but as far as going into the qualified immunity area, he did not make decisions to deprive any rights. So with respect to Officer Valero, I ask that also, based upon that, it be reversed. What is the legal theory that you're asking us to? Again, I want to be very careful that this is an interlocutory appeal and the basis is qualified immunity. And with respect to the deprivation of rights that Officer Valero caused, I don't even think that he made decisions, no less knowingly violated his rights. Yes, yes. So that would be after final judgment, right? Correct. Okay. All right. Thank you. Thank you. Good morning. Good morning. I'm Robert Soloway, Maine Police of the Court. I represent James Cappiello. Which firm? Rothman, Schneider, Soloway, and Stern, Your Honor. Again, good morning. Go ahead. Strict scrutiny or not, there has to be, in this circuit, conduct that shocks the conscience in support of a constitutional violation under the 14th Amendment, a substantive due process violation. Is that a qualified immunity question, whether the conduct rises to the level of a constitutional violation? Well, there's a requirement in order for someone to be liable for a 14th Amendment. I understand that, but you're here on interlocutory appeal only on the question of qualified immunity. Well, you know, that's a part of this appeal, Your Honor, that I know has been addressed by the plaintiff. And we have a summary judgment decision by the district court, by the motion court, that basically ends this case for all but the consideration of damages. And you have to wonder at what point the merits on appeal are going to be addressed. In the context of Johnson, which was cited by the plaintiffs, for the- I'm not sure I agree with you. I mean, the district court considered and was obliged to consider that all the facts alleged by the plaintiffs would be proved. Now, maybe you agree with that, but to the extent you don't, at trial you'll have the opportunity to dispute those facts. It's only for purposes of this motion that they're being assumed. There is no trial here, though, Your Honor, because summary judgment has been granted on the liability aspects of the case in favor of the plaintiff appellee. We can deal with that when there's a final judgment. But is the resource- I don't want to argue with you and take up your time. If you think that we can take the merits of it, you're going to have to give us some authority. Well, I think, Your Honor, that because in a situation where we have my client, specifically, who is involved only in the first period of deprivation, which Your Honors may have noticed, which was a deprivation of the right or the privilege of John Doe to be with his infant child and new wife after he was released to parole in November of 2011, the fact is that this individual was dealt with by my client, Mr. Cappiello, only for the period October through November, the initial four months. And I'm speaking only about him. Now, we're talking about a person who my client met for the first time on October 4, 2012. According to a Bronx County jury in 2002 and 2003, this plaintiff repeatedly sexually assaulted his wife's niece, who at the time lived under his own roof in a kinship foster care arrangement. Was a 13-year-old girl. She was 12 and 13 during that period. And not an infant boy. No, not an infant boy. But as indicated by my co-counsel, the idea of the way this person conducted himself is not necessarily going to be limited to improprieties or improper conduct toward any particular person. Yes. Was there an impediment to, once they made that determination about his background and so on, to conducting some minimal form of hearing? Well, it's important, I think — Could you just answer my question first and then get — I'd say the answer to that would be that it wasn't required. And the reason it wasn't required — Was there an impediment? Was there anything that I'm missing in this record that prevented them from having a hearing? No, there was definitely not an impediment, Your Honor. But there was what the people were doing. I mean, this is a real-world situation in which a group of parole officers for the first time on October 4, 2012, are confronted with this individual, John Doe. And they learn many things about him on that day that are very disturbing, including the fact that he hasn't informed them about this newborn baby, including the fact that he has a very vicious history of heinous sex crimes against a 12- and 13-year-old woman — — in his own home, his wife's niece, including the fact that he has a seriously violent criminal history of violent felonies that resulted in — I'm actually sympathetic to their predicament. The problem is that we've, I think, clearly established some requirements before you deprive someone of their right to visit or to be with their kids. I would say, because the red light is on, that there is a — where someone is deprived, Your Honor, without a hearing, under these circumstances, for four months from his infant son, where the universe of information that the parole officials learned — And my client, of course, is a supervisor. He's not the parole officer. He participates in the separation. The parole officer's responsibility is to supervise, to conduct direct meetings and direct involvement with the parolee, and to do the investigation. My client and his personal involvement, which is important in 1983 action, is to participate on October 4th, and then on February 7th, 2013, four months later, she's put back — John Doe is authorized to return to the home. My client doesn't do anything to try and stop that. He doesn't act maliciously or with ill intent toward that. He is not dealing with this parolee on a day-to-day basis. Is it required for my client, James Cappiello, to do anything more than cure the violation that exists that day, direct the parole officer who deals with him to conduct an investigation? He's not doing the investigation. He supervises parole officers. The question is, the one I asked your co-counsel, which is, what about supervised visits during this time? It's — okay. I mean, you are — the clearly established law is that there's an established right that can only be deprived in accordance with strict scrutiny, which means the least restrictive means. Even if they felt, given his past conduct, that he could not be alone, even with a newborn, what is the basis for thinking that he could not participate in supervised visits? There's no basis. The only question — but the question is — But if there's no basis, you can't claim that you have a right to qualified immunity. You can because it's not clearly established what it would mean for an appropriate approach to this situation that existed here. It's not necessarily — I would say it's a question of fact whether or not these parole officers, and specifically I'm just talking about my client in this four-month period, should have taken steps to tailor some kind of individual program for this person to have some contact with his son. Is that what strict scrutiny means? It does. But it depends. The other side of the coin is the compelling interests. The other side of the coin is the — as per the rulings of this Court, is the intent of the person in the parole officer's position or the parole official's position. Would it be your burden to be able to show that no reasonable officer or wasn't debatable among reasonable officers that he could have had supervised visits with this child? Judge — Otherwise — I mean, you have an argument in other contexts, but I'm not sure how you have a qualified immunity argument. The fact that — because it wasn't — while strict scrutiny is clearly established, and the associational right to intimate familial relationships is an established right, what should have occurred here? To say that a deprivation — like, what if in the fifth month they had decided to give him some kind of methodology for or structure for seeing his child? Who's to decide that four months is a period during which — I think a jury, that's really where I'm going — that strict scrutiny required something less than four months for something to be tailored? That's what I don't — You think a jury — that there's a fact question for a jury. You're challenging the summary judgment award. You're not challenging the qualified immunity. In fact, you're almost conceding that it can't be qualified immunity because there are questions of fact in dispute. Qualified immunity is something that can also — is not — the fact that there is a doctrine of qualified immunity that protects government officials in their work when they have met many different tests — Qualified immunity can be determined — can go to the jury, I believe, right, Judge? I mean — It can. Yes. And so we can't — you can't — you cannot say — You're challenging the summary judgment award. I'm challenging the summary judgment award because, Judge, the district court, the motion court, relied on a bunch — on two, I'm sorry, criminal cases, McKeog and Myers, which were before this court on direct appeal of sentencing issues. But the only argument you can make to this court is we're entitled to qualified immunity as a matter of law, and we didn't get it. But that is what I'm saying. I'm saying we're entitled to qualified — You said there are questions of fact to go to a jury. No. I'm saying that qualified immunity in my client's situation is clear because it's not possible to conclude as a matter of law that my client and the conduct that he engaged in in this four-month period — I think you've got the standard wrong. It's you who have to show you're entitled to qualified immunity as a matter of law, not they who — But we have done that, Your Honor, because, Judge — because the district court relied on cases that had nothing to do with qualified immunity. And he applied a standard that didn't consider the elements of the torch that were involved. Is your argument that four months is not that long? Yes. It is. And if there were a case law, Myers, set of other cases that says 10 days is too long, and we relied on that case law, you would lose. But your argument is those are separate, different issues arising under — in different contexts. Four months is not that long. It would depend on whether those cases were distinguishable, because the standard is shocks the conscious. The conduct of the parole officer has to shock the conscious, as has been described in many different — Due process argument. But that's what we lost on four — Without their being — without strict scrutiny being satisfied. I am saying we are entitled to — yes, absolutely. That is what I'm saying, Judge. Thank you. Morning, Your Honors. My name is Edward Kratt, and I'm of counsel to Hammack and Sullivan, the attorneys for Richard Rosado, Senior Parole Officer Richard Rosado. I'll make my remarks brief, because co-counsel, I believe, has adequately addressed issues common to all three defendants and appellants here. My principal point is that the district court did not consider the peculiar facts and circumstances that confronted Senior Parole Officer Rosado, and that informed his decision regarding the restriction of John Doe's access to his infant son. Specifically, we have a situation here that Mr. Soloway and co-counsel addressed, where a parole officer has to make a determination involving multiple factors, including the protection and security of society, the protection and security, indeed, of John Doe's family, in making a decision whether to allow an individual, as John Doe was, a convicted sexual offender, to cohabitate with his son. The district court did not adequately consider all the facts and circumstances that confronted Senior Parole Officer Rosado. The court basically states that, well, Senior Parole Officer Rosado did not adhere to the constitutional standards, and, therefore, there is no issue of fact. But, in fact, there are issues of fact. But the question is whether there are issues of fact with respect to qualified immunity. I mean, if the officers involved here did not consider, didn't consider, less restrictive means than absolute prohibition, then I'm not sure I know what we're arguing about. Judge, let me address that particular point, because there were other individuals and entities involved in this decision, in addition to the parole officers, including Officer Rosado here. Investigations were initially conducted by the parole officers, which included obtaining records from the Bronx Criminal Court, obtaining records from Family Court, reviewing records from NICATS, which was the sexual offender program that John Doe was in at the time. All of these things were done by the various parole officers and senior parole officers involved here. Now, why should we say that Senior Parole Officer Rosado or Cappiello or Valerio, why are they the ones that are responsible specifically for tailoring the restrictions on John Doe? Where is Family Court here? The reason for Family Court is to deal with these particular issues. Where was NICATS here? Where were other entities here? You're putting all of this on these parole officers who are taking into account issues involving protection, an obligation to protect society, as well as the families involved here. The District Court did not consider— Why does this relate to your qualified immunity argument? Pardon me, Your Honor? Why does this relate to your qualified immunity argument? Because qualified immunity, Your Honor, is a measure of reasonableness. And what the District Court has said, established, they have decided that Senior Parole Officer Rosado and the others were not reasonable here. And our position is this is an issue of fact that a jury should determine. That's the basis of qualified immunity. But when you say that qualified immunity can only be decided on a question of fact, you're agreeing that you're not entitled to it as a matter of law. Judge, my position is that this is a jury question. That's a challenge to the summary judgment decision. Your only appeal here can be that you were entitled to qualified immunity as a matter of law on the facts viewed most favorably to the plaintiff. That's the standard, right? That is correct, Judge. Okay, so how do you satisfy that? I mean, it almost seems to me like your appeal is premature. You want to argue about whether they were entitled to summary judgment. You may have an opportunity to do that once final judgment is entered. Judge, our position is that there are facts, issues of fact that should be determined by a jury, not by the District Court. Box yourself in by presenting this in the context of an interlocutory appeal. Do you understand that? Judge, that is our remedy here on qualified immunity, our only remedy for an interlocutory appeal on qualified immunity. Thank you. Thank you. Good morning, Your Honors. May it please the Court. My name is Blair Album of Friedman, Kaplan, Seiler, and Edelman on behalf of Appelee's John and Jane Doe and their son, M.S. Here, on two separate occasions, parole officers barred Doe from having any contact whatsoever with his newborn son, M.S., forcing Doe into a homeless shelter and leaving Jane Doe without the companionship of her spouse or a co-parent to help raise M.S. in the earliest and perhaps most difficult stages of parenthood. The ban was complete and total. No letters, no phone calls. Doe was not even allowed to keep a photograph of M.S. Parole officials imposed this ban based solely on the fact that one of Doe's parole conditions required him to obtain the written permission from his parole officer prior to having contact with anyone under the age of 18. So the default is that he doesn't have any contact with anybody under 18, correct? Absent prior approval from his parole officer. Has the order set out any parameters or any standards for the parole officers to consider? The condition itself, Your Honor? No, to create an exception to it. Well, the exception is inherent in the wording of the condition. By its terms, the parole officer has the discretion. What is there that's supposed to guide the parole officers in making that determination? Well, the constitutional analysis where if they're going to deprive somebody of their constitutional rights to interact with their child because there is a compelling government interest in protecting the child and nobody is disputing that, then they are required to make an individualized assessment as to what conditions are reasonably necessary to protect the child while also respecting the rights of the parolee. Let me focus on the second deprivation component of this case because I'm trying to understand exactly what the position, what your position is. So there is a protocol and it allows for 45 days for the parole officers in this case to make a determination. If we were just talking about that 45-day period and they had conducted their investigation within the 45-day period and made an assessment for whatever reason, but some real reason, that your client was not entitled to visit his child, would you then still have a basis to defeat qualified immunity? Solely on the procedural deprivation? No, I think the procedural violations are tied into the substantive violations. I'm not sure that a procedural violation on its own, a mere 45, you know, going over the 45 days. Well, that's what I'm focused on, a mere 45 days. So 45 days, so long as it's pursuant to a protocol. I think that the protocol is designed to protect, designed to mimic the constitutional standards. I'm not sure if 45 days is too long. You'd be in the difficult position of whether you had to attack the protocol itself before you could attack officers who were following it. But that's not the theory here. No, I understand that's not here, but that's... I'm sorry, maybe I'm not understanding, Your Honor. Are you asking specifically about whether the 45-day period in and of itself does not meet strict scrutiny? No. Personally, I don't think so. I think 45 days is extremely long to be without your child, especially, you know, in the circumstances of this case. The parole officers here gave no regard to the fact that the condition by its very terms gave them the discretion to approve contact. And no attempt was made in either period by their own admissions to narrowly tailor the restriction on parental contact. And they certainly provided no opportunity for plaintiffs to be heard again by their own admissions. The qualified immunity doctrine, as defense counsel pointed out, rightly so, gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. If there is an objectively reasonable basis for an official's decision, then whichever way they make that decision, the doctrine properly shields them from liability. But as the district court determined after a full airing of the undisputed facts on cross motions for summary judgment, this is not one of those cases. Defendants don't dispute that a parent's interest in maintaining a relationship with his or her child is a fundamental liberty interest protected by the Due Process Clause of the 14th Amendment. So I won't address that here. The crux of appellant's defense is that... Does the child have an independent interest? Yes, Your Honor. There is case law. Not only does a parent have a right to parental contact, but the child has a reciprocal right as well. The action is brought on behalf of the child in part, right? The lawsuit is being brought by the parties individually and on behalf of the child. Yes. MS is a named defendant. While I ask you about that, there may be an obvious answer to this, but why are John Doe and Jane Doe suing anonymously? You know, at the time, I think we were just concerned about their... He was under parole supervision at that point. I'm not sure that's a ground for him to sue anonymously. I mean, we do the public business, and it's usually that people sue in their own name. Might we ask for something within 10 days on why this suit should be maintained anonymously? Sure. Absolutely. We're happy to brief that for Your Honor. Let's do it by... As I said, there may be an obvious answer. It's just not apparent to me. At the moment, it's not apparent to me either, so... We'll do it by simultaneous letter briefs. 10 days would be... Yes. By 5 p.m., just file simultaneous letter briefs with the clerk of court. We will do that. Thank you. The crux of appellant's defense here is that even if the parole officer has violated plaintiff's clearly established constitutional rights, their actions were nevertheless objectively reasonable in light of facts that they argue were not considered by the district court. These arguments are outside the jurisdictional scope of this interlocutory appeal. Defendants must accept the district court's assessment of the factual record, and for that reason, the vast majority of their arguments must be disregarded. Even if their arguments were properly before the court, appellants are wrong as a factual matter. The district court did directly address many of appellants' factual contentions and found them to be entirely devoid of support in the record. To the extent that some of these arguments were not expressly rejected by the district court, that does not mean that the district court didn't take them into account in rendering its determination. I should point out that in a footnote in the district court's opinion, it did note that it had reviewed all of the exhibits that were submitted by the parties. But you don't have to take the district court's word for it to see that appellants' actions were objectively unreasonable. On the undisputed facts, including appellants' own admissions, both to the district court and in their appellant briefs to this court, they made no effort to narrowly tailor the deprivation of plaintiff's fundamental rights or to provide any sort of opportunity for plaintiffs to be heard. In the first deprivation period, Doe was barred from all contact with MS based solely on the fact that the special condition had been imposed. This was a blatant misreading of the condition, which by its expressed terms gave the parole officials discretion to permit contact. But even assuming that a brief period of separation was reasonable to give the officers an opportunity to assess how to exercise that discretion, that is, to assess whether Doe posed a risk to his child and whether a restriction on contact was necessary, the officers effectively conducted no such assessment. They didn't even ask Doe's wife whether she supported contact. And most importantly, by their own admission, and this is from the joint statement of undisputed facts, this is the first deprivation, in the joint statement of undisputed facts that was submitted to the district court, they admitted that they did not even consider whether limited contact was appropriate and they did not consider their decision subject to change at that time. In the second deprivation period, no new fact or circumstance justified removing Doe from his home. Again, the decision was based on the mere fact that the special condition had been imposed.  had lived with his family for seven months without any issues concerning MS's safety. But there is no evidence that any consideration was given to whether a restriction on contact was necessary or how to narrowly tailor any restriction. And when Lima belatedly considered Doe's request for parental contact under the protocol, as he admits, he did not even consider whether to allow limited contact. Did he have the benefit of counsel when he consented to the imposition of this condition? At the time that the condition was imposed, I don't believe he had counsel, no. Mr. Lima admitted that he did not even consider whether to allow limited contact because Doe sought full contact and did not expressly request limited or supervised contact. This flies in the face of constitutional standards and you don't need to read case law to know that. It is apparent merely by reference to a basic human common sense understanding of parenthood that any parent seeking contact would prefer some to none. And this line of defense also is particularly troublesome given that the protocol expressly contemplates that a request for parental contact can be approved in modified form. And, in fact, it expressly requires parole officers to consider whether less restrictive conditions are appropriate before they impose a no contact condition. If Officer Valerio had, and I'm just putting this out there, had recommended early on, within whatever period, that Mr. Doe be permitted to at least have some form of supervised visitation with his infant son and that had been countermanded, what would that mean with respect to Valerio's ability to successfully claim qualified immunity? Well, I still think he would not be able to claim qualified immunity. Why is that? Well, I think the test is whether it would be objectively reasonable for a parole officer to believe that his actions were lawful. So if he had recommended contact, then he would be correct in his belief, I suppose. So, yes. Yeah, in that case, I think he would be entitled to qualified immunity. Yes. Briefly, with respect to plaintiff's procedural due process claims, it's virtually undisputed that the Does were given no procedural due process protections in either period. In the first period, again, even assuming that an emergency warranted removing Doe from his home without a pre-deprivation hearing, the parole officers undoubtedly were required to provide the family with a prompt post-deprivation hearing. That never happened. The Does were never advised of any procedure by which they could contest the decision. And in the second period, the abject disregard for procedural protections was even more egregious because at that point, as I had noted, he had lived with his family for seven months with no issues.  It took 147 days, but. At the time that they removed him the second time, that was at least a month before the protocol had even been initiated. They did that on their own regard. Okay. Thank you. Thank you all. We will reserve decision.